```
                    FILED
              U.S. DISTRICT COURT
              EASTERN DISTRICT OF LA

              2001 FEB -1  AM 11: 55

              LORETTA G. WHYTE
                    CLERK
```

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SHAREEF COUSIN, | * | CIVIL ACTION #00-0069 |
| Plaintiff | * | |
| | * | |
| versus | * | SECTION "R"/MAG. 2 |
| | * | |
| | * | |
| ANTHONY SMALL, et al | * | JURY TRIAL |
| Defendants | * | |

****************************************

### REPLY MEMORANDUM OF DEFENDANTS
### CONNICK, BERRY, JORDAN AND KENNEDY

This Reply Memorandum is furnished to the Court in the event that the Court should consider the memorandum filed by the plaintiff in spite of the fact that it was untimely filed.

Distilling the entire memorandum of the plaintiff consisting of twenty-one (21) pages, the fact still remains that there is not one affidavit that the plaintiff supplied that has anything to do with the allegations of the Complaint involving the prosecution of Cousin. The affidavit of Danalynn Recer (Exhibit E) apparently executed in Texas on January 29, 2001, the day the response was filed, does not relate to any facts of which Danalynn Recer has any personal knowledge. Instead, the affidavit reflects that Ms.



Recer interviewed a convicted felon and transvestite in jail, long after the trial was over and while preparing for a second trial. It is noteworthy that the convicted felon himself does not supply an affidavit. Such statements as "Roger Jordan apparently told him....." in paragraph 6 page 2, and "[t]he following is the substance of the statement he apparently gave...." in paragraph 6 page 1, can only be conclusions reached by the interviewer Recer from information related to her by another.

**Prescription**

The plaintiff does not contradict one aspect of the prescription argument. The plaintiff cites to *Heck v. Humphrey*, 512 U.S. 477, as dealing "squarely with the issue" of prescription. This case has nothing to say about prescription. It merely stands for the proposition that a Civil Rights Claim may not be adjudicated as a disguised habeas corpus proceeding. Furthermore, the plaintiff continuously confuses "Brady" material issues with all other discovery issues, wanting this Court to believe that a failure to provide discovery or the providing of discovery under the Louisiana Criminal Code is a "Brady" issue. That is certainly not the case. The fact that Val Solino, an Assistant District Attorney, states in his affidavit that he turned over "notes and tapes {of alibi witnesses} to defense counsel" on January 7, 1999 does not mean that the notes and statements of alibi witnesses are "Brady" material, nor has it ever been complained that the alibi witnesses were "Brady". Defense counsel furnished the identity of the alibi witnesses to the prosecutors. The prosecutors merely interviewed them and obtained statements from them, as did counsel for Cousin. Furthermore, plaintiff's counsel

argues what Mr. Solino "does not say in his affidavit-but will no doubt concede when deposed." Yet plaintiff has never notified the defendants that he intends to or desires to depose Mr. Solino, and plaintiff is running against a discovery deadline of February 13, 2001, by which plaintiff obviously feels he is not bound.

The prescription argument made by the defendants derives necessarily from the dates that are set forth in the Complaint. The plaintiff's conviction was reversed in April of 1998, not for any "Brady" violations, but for error in the trial itself. All of the complaints of the plaintiff have to do with his conviction in January of 1996, whether those complaints are one pertaining to "Brady" violations or the outlandish accusations of criminal activity of "kidnapping" during the trial in 1996 and "illegal" interviewing of alibi witnesses provided by the defendant to the prosecutor prior to the trial.

**Plaintiff's Claim for the Need of Discovery in Order to Respond**

The plaintiff filed a complaint herein on January 7, 2000. The Complaint itself contained over three hundred allegations, including rambling facts, opinions, admonitions and gratuitous advice. Plaintiff did absolutely nothing in this case to avail himself of the discovery process to tie down the facts through any sort of discovery until December 15, 2000, when he sought an enlargement of time within which to file a notice of intent to use an expert. The plaintiff then neglected to timely file his list of witnesses and exhibits and still has not done so. Plaintiff now, after the time has passed again, seeks an extension to respond to the Motion for Summary Judgment and the Motion to Dismiss because he has not obtained adequate discovery. As of this

3

writing, the only deposition that has been taken of any witness in this case has been taken by the District Attorney defendants.

The plaintiff has not established one reason why this dispositive motion should be delayed.

### The unsupported allegations of misconduct, such as kidnapping, suppression of favorable evidence, illegal interrogation of witnesses, etc.

Without providing to the court one bit of evidence to support the outlandish allegations and accusations of "kidnapping" and "illegal" interrogation much less showing any legal authority for the propositions that are stated, the plaintiff seeks to convert his "Brady" concept into a concept of suppression of favorable evidence and to raise constitutional rights of other parties as a basis for his claims.  The plaintiff suggests that it is "kidnapping" when the district attorney personnel have witnesses sitting in the District Attorney's Office rather than in the halls of the Court.  The plaintiff does not assert, even by way of an affidavit of his counsel that at any time plaintiff's counsel requested an appearance of a witness that they had under subpoena at the trial and were unable to locate them.  Furthermore, the deposition of Judge Roland Belsome, then defense counsel for Shareef Cousin, testified in his deposition on Saturday, January 27, 2001 that, in fact, no witnesses that were under subpoena were denied to them; that no request was made of the court for a witness who did not appear; and, that no witness situated in the office of the District Attorney was ever denied access to the witness stand. [1]

---

[1] His deposition has not been transcribed yet, and hence not filed.

The fact of the matter is that the witnesses who plaintiff continues to refer to as "alibi witnesses", witnesses who were provided to the prosecutor as supplying an alibi for the plaintiff, were interviewed by the prosecutors as part of their due diligence and which witnesses were either made out to be bald face liars when they testified or were not asked to testify at all by the defense team. Plaintiff also complains about "illegally interrogating witnesses" as not being a proper prosecutorial function, which is protected by immunity. This issue was brought before the trial court in the murder case as the Court will see from the hearing on the Motion for New Trial, Exhibit F of plaintiff's response. Needless to say, the Motion for New Trial was denied. Plaintiff, in effect, believes that by characterizing the activities of the prosecutor as he does that he can bring it out of the realm of reality into his own personal fantasy world of constitutional rights. The plaintiff thinks that he is entitled to results of the questioning of the alibi witnesses done by the District Attorney because for some reason or other the witnesses did not tell the District Attorney the same lies that they told the plaintiff's attorney.

Finally, the plaintiff contends that the issue of the District Attorney's official liability cannot be decided in his favor because the plaintiff disputes the facts contained in the affidavit yet the plaintiff has not supplied one affidavit from any of the defense counsel who handled his case who are, incidentally, the same counsel who have been listed on the present complaint.

Throughout the Complaint and throughout the response that has now been filed by the plaintiff to the District Attorney defendants' Motion to Dismiss and/or Summary

Judgment, the plaintiff has sought to use the reversal of the Cousin conviction by the Louisiana Supreme Court on April 14, 1998, 710 So.2d 1065 (La. 1995) as a springboard for his allegations of "Brady" violations and now obtaining statements of alibi witnesses supplied by the plaintiff before the trial in 1996 and the accommodation of the witnesses in the District Attorneys Office during the trial as being favorable evidence which violated plaintiff's constitutional rights. This, in spite of the fact that the Supreme Court of Louisiana hinged its entire decision on the error committed during the trial on the admission of certain evidence and not on "Brady". The footnote in the opinion does not offer any solace to the plaintiff's claim of "Brady" violations since it had nothing to do with the opinion and was nothing but gratuitous dicta. At any rate, by April of 1998, Cousin was no longer confined by reason of this murder conviction. From that point forward, he was free to file his Civil Rights Complaint and did not do so. Yet he and his counsel knew of all of the acts of which he now complains as being a violation of his constitutional rights. All of those violations that he complains of were violations that occurred between indictment by the grand jury and trial as well as the Motion for New Trial that was concluded on June 24, 1996, three and one-half years before he filed suit in this matter. Each act complained of occurred as a function of prosecution between the indictment and the trial.

Additionally, the plaintiff's claims against the District Attorney defendants should be dismissed as it has prescribed.

Respectfully submitted,

**WESSEL & ASSOCIATES**
**A LAW CORPORATION**

_____
WILLIAM F. WESSEL (#8551)
127 Camp Street
New Orleans, Louisiana 70130
Telephone (504) 568-1112
Facsimile  (504) 568-1208
Attorney for the Defendants, Kennedy, Berry, Jordan and Connick

## CERTIFICATE OF SERVICE

I certify that a copy of the above and foregoing pleading has been served upon counsel for all parties by facsimile, and upon Clive Stafford Smith by hand and upon Kern Reese, Esq., and George Wallace, Esq., by United States mail, properly addressed and postage prepaid this 30th day of January 30, 2001.

_____