FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 FEB 22 PM 2: 50

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SHAREEF COUSIN, | * | CIVIL ACTION #00-0069 |
|     Plaintiff | * | |
| | * | |
| versus | * | SECTION "R"/MAG. 2 |
| | * | |
| | * | |
| ANTHONY SMALL, et al | * | JURY TRIAL |
|     Defendants | * | |

*********************************************

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS CONNICK, BERRY and JORDAN FOR DISMISSAL, OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT**

**MAY IT PLEASE THE COURT:**

This Supplemental Memorandum is filed in response to the opposition filed herein to Defendant Prosecutors' Motions to Dismiss, or, alternatively, for Summary Judgment by Plaintiff Shareef Cousin.[1]

---

[1] As a preliminary matter, in response to Defendants' Motions, Plaintiff has filed a "Plaintiff's Statement of Undisputed Material Fact". In addition to responding to Defendants' Statement of Undisputed Material Fact", Plaintiff listed statements of fact numbered 29 thru 76. These statements are, for the most part, neither undisputed nor material. Plaintiff did not, as

1

The thrust of Defendants' Motions currently pending before this Court is as follows: (1) that all of the claims asserted by Plaintiff herein are prescribed; (2) that the claims asserted by Plaintiff against the Defendant Prosecutors, in their individual capacities, are barred by the doctrine of absolute immunity; (3) that, alternatively, the claims asserted against the Defendant Prosecutors, in their individual capacities, are barred by the doctrine of qualified immunity; and (4) that Plaintiff's claims against the Defendant Prosecutors in their official capacities should be dismissed under Rule 56 inasmuch as their exists no genuine issue of material fact sufficient to support a finding by any reasonable trier of fact that there exists a policy, custom or practice of the Office of the District Attorney in Orleans Parish which resulted in the violation of Plaintiff's constitutional and/or civil rights.

I.      **Prescription**

In opposition to the Defendant Prosecutors' motion to dismiss Plaintiff's claims as prescribed, Plaintiff relies on <u>Heck v. Humphrey</u>, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). However, *Heck v. Humphrey* does not support Plaintiff's argument, but rather underscores the correctness of Defendants' position, for the Supreme Court made clear in its opinion therein that §1983 claims arising in the context of a state criminal prosecution can be divided into two categories – (1) those that contest the lawfulness of a resulting conviction or sentence, and (2) those that do not necessarily imply the unlawfulness of a resulting conviction or

---

required by Local Rule 56.2, attach a short statement of material facts as to which there exists a genuine issue to be tried.

2

sentence. With respect to the first category, §1983 claims contesting the validity of state criminal conviction accrue upon reversal by a state court.

> "Just as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor, [citations omitted], so also a §1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated."

512 U.S. at pp. 489-90. With respect to the second category involving allegations of constitutional violations which take place in the context of a state criminal prosecution but do not attack the validity of the conviction or sentence *per se*, these claims do accrue prior to reversal of conviction, may be brought during the pendency of the criminal prosecution, and should be allowed to proceed "in the absence of some other bar to suit." *Id.* at p. 487. Also see the Court's opinion at Ftn. #7.

> "For example, a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the §1983 plaintiff's still-outstanding conviction... [S]uch a §1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful. In order to recover compensatory damages, however, the §1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury [citations omitted], which, we hold today, does not encompass the 'injury' of being convicted and imprisoned (until his conviction has been overturned).

As a practical matter, in the case presently pending before this Court, the distinction between these two types of §1983 claims is immaterial. Plaintiff filed the Complaint in this proceeding on January 7, 2000. Assuming Plaintiff's claims contest the validity of his conviction for first degree murder (as do clearly most, if not all, of Plaintiff's claims, including

3

claims that prosecutors intentionally withheld exculpatory material which would have in all likelihood had an affect upon the outcome, claims that prosecutors sought and presented perjured testimony at Plaintiff's state murder trial, claims that prosecutors "coerced" Plaintiff's alibi witnesses into submitting to pre-trial interviews, claims that prosecutors prevented Plaintiff from calling certain alibi witnesses on his own behalf, claims that prosecutors were racially motivated in seeking the death penalty against Plaintiff, etc.), these causes of action accrued on April 14, 1998, the date upon which the Louisiana Supreme Court reversed his conviction, and were clearly prescribed prior to the filing of the Complaint. Any of Plaintiff's claims which could arguably be characterized as not attacking the validity of Plaintiff's conviction would have accrued on the day upon which Plaintiff first knew or should have known of the alleged violation. Helton v. Clements, 832 F.2d 332, 334 (5th Cir. 1986). As demonstrated by the affidavits and exhibits filed in connection with Defendants' Motions, Plaintiff knew of each and every one of the facts underlying his allegations of constitutional violations more than one year prior to the filing of the Complaint. Further, Defendants attach hereto, as Exhibit 10, the "Plaintiff's Response to Prosecutor Defendant's Interrogatories". At Answer to Interrogatory No. 2, the Plaintiff identifies the date upon which he secured certain documents. All of the Brady material of which plaintiff complains he was denied before his trial was received on May 28, 1998, June 4, 1998 or September 10, 1998, all of which dates occurred more than one year prior to the filing of the Complaint herein. The only events which Plaintiff claims occurred within the one year prescriptive period were (1) Plaintiff's receipt of certain audiotapes of

4

interviews of his own alibi witnesses (which tapes Plaintiff received not for constitutional reasons but under state discovery orders) and (2) alleged statements by ADA Val Solino which do not even amount to an allegation of any constitutional violation. Plaintiff's claims are therefore barred by prescription.[2]

Plaintiff's assertion that there may be additional violations of which he is currently unaware is woefully inadequate as an opposition to these motions. The cut-off for discovery in this case occurred on February 13, 2001. This Court generously permitted Plaintiff to file an untimely opposition to Defendants' Motions and extended the time for filing of affidavits, or other appropriate evidence, to February 14th in order to permit Plaintiff the use of all evidence obtained in discovery in connection with his opposition to these Motions. Plaintiff's amorphous, unsubstantiated concerns that he may have failed to uncover additional "violations" of his constitutional rights are legally insufficient to defeat Defendants' Motions.

## II  Absolute immunity of the Defendant Prosecutors in their individual capacities

In response to the Motion to Dismiss, or, alternatively, for Summary Judgment filed by Defendants Connick, Jordan and Berry[3] with respect to claims brought against them in their

---

[2]The sole claim asserted by Plaintiff in this proceeding which is not barred by prescription is the claim of malicious prosecution, which did not accrue until the prosecution was nolle prosequied on January 8, 1999 . However, as more fully discussed in Defendants' original Motion, the DA Defendants, in their individual capacities, are absolutely immune from suit under §1983 for malicious prosecution; Plaintiff has not alleged any "policy, custom, or practice" of malicious prosecution; and the DA Defendants are immune under state law pursuant to the La. Supreme Court's ruling in Knapper v. Connick.

[3]Since the filing of Defendants' Motions, Plaintiff has entered a "Notice of Dismissal" of all claims filed herein against former ADA Greg Kennedy.

5

individual capacities, Plaintiff argues four separate acts of the Prosecutors which he claims are not entitled to the protection of the doctrine of absolute immunity. While Plaintiff has cited a number of cases which stand for the proposition that prosecutors are entitled to absolute immunity from suit under §1983 for acts taken pursuant to their traditional function as prosecutors, but only qualified immunity for acts which are purely "investigative" in nature, Plaintiff has cited no case which stands for the proposition that any of the acts of the DA Defendants of which Plaintiff complains were "investigative" as opposed to "prosecutorial".

**A.     Denying Plaintiff the right to call certain witnesses at trial.**

Plaintiff alleges that the Defendant Prosecutors "kidnaped" certain of Plaintiff's alibi witnesses, requiring them to remain in the DA's office during Plaintiff's murder trial. Since clearly Plaintiff has no right or standing to assert the claims which would inure to these witnesses that their constitutional rights to liberty were violated, Plaintiff is apparently asserting that the actions of the prosecutors denied to him his constitutional right to call these persons as witnesses at his murder trial. While Defendant Prosecutors vigorously dispute the factual basis of these claims, it is respectfully suggested that this dispute is immaterial. Further, Plaintiff's attempt to frame the issue as whether or not Defendants conduct was an exercise of a "proper" or "legitimate" prosecutorial function is inapposite; all allegations of constitutional violations will be allegations that the prosecutor acted "improperly" or "illegitimately". The question is more properly framed as whether or not the prosecutor's alleged activities are "... intimately associated with the judicial phase of the criminal process". Imbler v. Pachtman, 424 U.S. 409, 430, 96 S.Ct.

6

984, 994, 47 L.Ed.2d 128 (1976). This has been interpreted by the various circuits as requiring a functional analysis to determine if "the injury sought to be redressed arose from the prosecution itself and not independently of the prosecution", Lee v. Willins, 617 F.2d 320 (2nd Cir. 1980), or whether "[the prosecutor's] actions directly concern the pre-trial or trial phases of a case", Taylor v. Kavanagh, 640 F.2d 450, 452 (2nd Cir. 1981). Clearly, Plaintiff's allegations regarding conduct by the Defendant Prosecutors regarding certain witnesses who were required to remain in the DA's office during the trial, took place during the course of the trial itself. It is hard to imagine conduct more integral to the prosecutor's role of advocate than the marshaling of witnesses during the actual trial. Regardless of what actually took place,[4] regardless of whether or not any action on the part of the Defendant Prosecutors violated Plaintiff's constitutional and/or civil rights, the Defendants are entitled to dismissal of these claims asserted against them in their individual capacities as barred by the doctrine of absolute immunity.

**B.     "Coercion" of Witnesses to Appear for Pre-Trial Interviews**

Assuming, solely for the sake of argument, that Plaintiff's assertions that the use of "DA Notices to Appear", in lieu of following the more elaborate procedure set out at La. Code of Criminal Procedure, article 66, unconstitutionally or unlawfully "coerces" witnesses to appear and give statements to the District Attorney, Plaintiff has not demonstrated how this practice

---

[4]Although Plaintiff complains that certain "alibi" witnesses were hidden from him in the DA's office during the trial, Plaintiff's trial counsel, Hon. Roland Belsome, testified in his deposition, taken herein, that Plaintiff's defense counsel never asked that these witnesses be called, nor did the defense ask that an attachment or bench warrant issue to secure their appearance. See Deposition of Roland Belsome, Exhibit 11, at pp. 28-32.

7

violated his constitutional rights. Plaintiff attempts to provide the basis for a finding of standing to complain of this practice by asserting that these interviews produced "exculpatory" evidence which was not disclosed to Plaintiff prior to the criminal trial. See Plaintiff's original "Memorandum in Reply", at pp. 14-15. It is clear, however, and apparently even the Plaintiff concedes, that the Defendant Prosecutors are entitled to the protection of the doctrine of absolute immunity in connection with claims of failure to disclose exculpatory evidence under Brady. In his "Supplemental Reply" (ftn. #4 at p. 4), Plaintiff adds the assertion that the DA's use of these DA Notices to interview Plaintiff's alibi witnesses prior to trial allowed the prosecutor to "trip up" alibi witnesses. This argument is ludicrous. Plaintiff has no constitutional right to prevent the prosecutor from obtaining pre-trial interviews with alibi witnesses and thereby obtain prior statements which may be inconsistent with their testimony offered at trial and useful as impeachment.

C. **Securing the testimony of witnesses not identified in the police report**

Plaintiff complains that Defendant ADA Roger Jordan interviewed witnesses whose names did not appear on the police reports, specifically James Rowell and Clifford Koonce aka Wayne Cooks. Plaintiff alleges that in these interviews Defendant Jordan suborned perjury by these witnesses, encouraging and/or coercing them to lie on behalf of the State and against Plaintiff at his criminal trial. While Defendants strenuously and genuinely dispute the facts underlying these allegations, Defendants respectfully suggest that this dispute is not material to a decision herein on Defendants' Motions. Plaintiff attempts to distinguish the legion of cases

applying the doctrine of absolute immunity to allegations that prosecutors knowingly presented perjured testimony in state criminal prosecutions, by characterizing the interviewing and/or using of testimony of any witness not listed on the police report as "investigatory". This distinction is patently absurd, and plaintiff has cited no case in support of this proposition. As aptly put by a district court in South Carolina –

> "...the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution **and actions apart from the courtroom**. A prosecuting attorney is required constantly, in the course of his duty as such, to make decisions on a wide variety of sensitive issues. These include questions of whether to present a case to a grand jury, whether to file an information, whether and when to prosecute, whether to dismiss an indictment against particular defendants, which witnesses to call, and what other evidence to present. Preparation, both for the initiation of the criminal process and for a trial, may require the **obtaining**, reviewing, and evaluating of evidence..."

Cribb v. Pelham, 552 F. Supp. 1217, 1222 (D.C.S.C., 1982)(Emphasis added.)

Prosecutors are quite routinely offered testimony by incarcerated individuals, or by those threatened with incarceration, in return for some kind of favorable treatment in connection with their own legal difficulties. To say that prosecutors may interview these potential witnesses and deal with them without fear of subsequent civil suit only in the event that their names appear in the police reports is ridiculous. Such a distinction poses the same threat of disruption in the orderly administration of justice and the vigorous prosecution of criminal offenses which originally caused the Supreme Court to apply the common law concept of absolute immunity to §1983 cases in Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct 984, 47 L.Ed.2d 128 (1976).

Plaintiff's allegations[5] regarding witnesses Rowell and Cooks are not only barred by the application of the doctrine of absolute immunity, they fail to state a constitutional violation in the first instance. At the trial of Plaintiff for first degree murder, Rowell failed to give the sworn testimony which Plaintiff alleges would have been perjured, but rather recanted previous statements given to the prosecutors to the effect that Plaintiff had confessed the crime to him. Witness Koonce/Cooks was never called to testify against Plaintiff in any trial.

D.    **The decision to seek the death penalty against Shareef Cousin**

In his "Supplemental Reply", Plaintiff suggests for the first time that the Defendant Prosecutors are not entitled to absolute immunity from suit based on allegations that their decision to seek the death penalty in the prosecution of Plaintiff for first degree murder was racially motivated. Plaintiff cites no decision of any court in support of this assertion. Plaintiff's inability to identify such a case is not surprising. It is in fact hard to imagine any act more intimately associated with the traditional role of the prosecutor, and therefore entitled to the protection afforded by the doctrine of absolute immunity, than the decision to seek the death penalty in a capital case.

III.   **Qualified immunity bars claims brought against Defendant District Attorney Harry Connick in his individual capacity**

Plaintiff's opposition to the Motion to Dismiss, or Alternatively, for Summary Judgment

---

[5]Here, it is appropriate that Defendants point out that they have moved, in the alternative, for summary judgment. There is no evidence in the record sufficient to create a genuine dispute as to Plaintiff's allegations regarding Rowell and Cooks. Plaintiff has only attached unsworn statements of Rowell and Koonce/Cooks at Appendix K and N, respectively. This is insufficient to defeat summary judgment, as a matter of law. FRCP 56(e).

10

directed to claims brought against Defendant Harry Connick in his individual capacity rests, apparently exclusively, upon allegations that Mr. Connick failed to discipline his assistant prosecutors for failures to disclose "exculpatory" or Brady material. While such allegations involving Mr. Connick's supervisory or administrative duties may not be barred by the doctrine of absolute immunity, the doctrine of qualified immunity still applies. Plaintiff cites no decision of any court which stands for the proposition that prosecutors have a constitutional obligation to "discipline" assistants when the convictions they obtain are reversed on constitutional grounds, much less one pre-dating the events of which Plaintiff complains which might have served as prior notice to Defendant Connick that his conduct was potentially constitutionally substandard.

IV. **No genuine issue of material fact exists with respect to claims brought against defendants Connick, Jordan, and Berry, in their official capacities**

Defendants Connick, Jordan, and Berry have moved, alternatively, for summary judgment. Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323-25, 106 S.Ct. 2548, 2552-54 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986); and Matsushita Electric Industrial Co., Ltd v. Zenith Radio Corp., 475 U.S. 574, 585,88, 106 S.Ct. 1348, 1355,57 (1986). A "material" fact is one that might affect the outcome of the suit under the applicable substantive law. Anderson, supra, 477 U.S. at 248, 106 S.Ct. at 2510. While the court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment, Eastman Kodak v. Image Technical Services, 504 U.S. 451, ___, 112 S.Ct.

11

2072, 2077 (1992), and Matsushita, supra, 475 U.S. at 587, 106 S.Ct. at 1356, in order for a dispute to be "genuine", the evidence before the court must be such that a reasonable jury could return a verdict for the nonmoving party. Anderson, supra. See also Judwin Properties, Inc. v. United States Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992). An examination of the evidence submitted by the parties in connection with these Motions demonstrates clearly the appropriateness of summary judgment herein.

    Defendants attached to the Motion the sworn affidavit of a number of witnesses, including but not limited to those of the defendants themselves, regarding the official policy of the Office of the District Attorney in Orleans Parish, recognizing the obligation of the prosecutor to disclose to criminal defendants certain information under the U.S. Supreme Court's decision in Brady v. Maryland. The affidavits also outlined the program of training and continuing legal education conducted by the District Attorney and his supervisory personnel designed to insure that the assistant district attorneys are aware of their obligations under Brady v. Maryland. In response, Plaintiff cites this Court's attention to a handful of cases decided in the 25 years since District Attorney Harry F. Connick first took office, in which cases the convictions obtained by the District Attorney in Orleans Parish have been reversed for failure to disclose Brady material. These citations are not "evidence". Carter v. Burch, 34 F.3d 257, (4th Cir. 1994) [Evidence of Judge's opinion granting postconviction relief on the basis of failure to disclose exculpatory info was properly excluded from evidence in §1983 case – probative value of opinion would be substantially outweighed by the danger of unfair prejudice to defendant]; see also Nipper v.

12

Snipes, 7 F.3d 415, 417 (4th Cir. 1993)[hearsay exception which allows admission of findings of agencies and offices of the executive branch does not apply to findings of judges (quoting Zenith Radio Corp. v. Matsushita Elec. Indus. Co., 505 F. Supp. 1125, 1186 (E.D. Pa. 1980)]. In a further attempt to respond to Defendants' evidence regarding the policies, customs, and practices of the District Attorney's Office, Plaintiff attaches a single affidavit to his Opposition, that of Bruce Whittaker. Mr. Whittaker's affidavit contains the solitary statement applicable to the issue – "From my lengthy experience in and around Tulane and Broad, Mr. Connick's office has a reputation for not always disclosing in a timely manner exculpatory evidence as required by law." This statement is insufficient as a matter of law to raise any genuine issue of material fact. "Reputation" is not an element of an official capacity claim under §1983. Plaintiff must demonstrate an official policy, custom or practice, and Plaintiff has utterly failed to demonstrate the existence of any evidence sufficient to create a genuine dispute as to the existence of such a policy, custom or practice.

The evidence submitted by Plaintiff in connection with his claim that the decisions of the Orleans Parish District Attorney to seek, or not to seek, the death penalty in capital cases is improperly motivated by racial concerns is even more deficient, if indeed that is possible. In support of these claims, Plaintiff makes certain unsworn and unsupported assertions in his "Supplemental Memorandum" at pp. 14-15 regarding events which transpired long before Defendant Connick was first elected Orleans Parish District Attorney in 1974. The sole other item of "evidence" presented to the Court in connection with Plaintiff's claims of racial

13

discrimination is attached to Plaintiff's opposition at Appendix M, and identified as "Statistical study of racial discrimination". This "study" is unsworn. Further, the author of the study is unidentified. The conclusions reached are unsupported. Perhaps most egregiously, Plaintiff has failed to timely identify any expert witness who could be called to testify to the opinions and "statistical conclusions" reflected therein, and this Court has already denied Plaintiff's application to extend the deadlines in this regard.

While the Supreme Court in Crawford-El v. Britton, 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) rejected a heightened standard of proof in constitutional cases requiring proof of improper motive, the Court's decision in no way abrogated the need for meeting the standard of proof under FRCP Rule 56, enunciated in the decisions of the Supreme Court hereinabove cited, specifically that the evidence adduced must be sufficient to support a finding by a reasonable jury in favor of the non-moving party in order to defeat summary judgment. FRCP 56(e) further requires that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show, affirmatively, that the affiant is competent to testify to the matters stated therein." The record of this proceeding is entirely void of any evidence of the kind and in the form required by FRCP 56, and specifically sub-part (e) thereof, of any unconstitutional policy, practice or custom of the District Attorney in Orleans Parish which resulted in the violation of Plaintiff's constitutional

and/or civil rights. Therefore, summary judgment herein is appropriate, dismissing the claims filed against the Defendant Prosecutors in their official capacities.

        Respectfully submitted,

**WESSEL & ASSOCIATES**
**A LAW CORPORATION**

_____
WILLIAM F. WESSEL (#8551)
VICTORIA L. BARTELS (2791)
127 Camp Street
New Orleans, Louisiana 70130
Telephone: (504) 568-1112
Attorney for the defendants, Connick,
Berry and Jordan

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon counsel for all parties by United States mail, properly addressed and postage prepaid this 21st day of February, 2001.

_____

15

**SEE RECORD FOR EXHIBITS OR ATTACHMENTS NOT SCANNED**