

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 JUN -4 PM 1: 13

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


SHAREEF COUSIN                          CIVIL ACTION

VERSUS                                  NO: 00-0069

ANTHONY SMALL, ET AL.                   SECTION: "R"(2)


### ORDER AND REASONS


Before the Court is a motion by defendants Harry F. Connick,
Roger W. Jordan, Jr., and C. Byron Berry, Jr. to dismiss
plaintiff Shareef Cousin's claims pursuant to Federal Rule of
Civil Procedure 12(b)(6) or, alternatively, for summary judgment
pursuant to Rule 56(c).  For the following reasons, the Court
dismisses plaintiff's claims against defendants under Rule
12(b)(6) or Rule 56 of the Federal Rules of Civil Procedure.

## I.   Background

On March 2, 1995, Michael Gerardi was shot in the head as he
and his date left a restaurant in the French Quarter in New
Orleans, Louisiana.  Mr. Gerardi died of his injuries.

DATE OF ENTRY
JUN 4 2001



Fee____
Process___
X_Dktd___
CtRmDep___
Doc.No___

After the New Orleans Police Department arrested plaintiff Shareef Cousin for the murder of Michael Gerardi, Assistant District Attorney Greg Kennedy screened the case. He recommended presenting it to the Grand Jury, and the District Attorney's "Charge Committee" accepted the recommendation. Kennedy then presented the case to the Grand Jury, which returned an indictment of first degree murder against Shareef Cousin.

The prosecution of Shareef Cousin was assigned to Assistant District Attorney Roger Jordan. Jordan reviewed the police report and evidence, handled the pre-trial discovery and motions, summoned and interviewed witnesses, selected the witnesses and evidence to present at trial, and generally prepared the case. Assistant District Attorney Byron Berry assisted Jordan.

A jury sentenced plaintiff Shareef Cousin to death for the murder of Michael Gerardi. *See State v. Cousin*, 710 So. 2d 1065, 1066 (La. 1998). Plaintiff appealed, and the Louisiana Supreme Court overturned the conviction on April 14, 1998, remanding the case for a new trial. *See id.* at 1074. The Louisiana Supreme Court found "clear violations of defendant's right to a fair trial." *Id.* at 1073. Specifically, the prosecutor "improperly urged the jury to accept the substance of . . . hearsay statements and to use the statements to convict defendant." *Id.* In two footnotes, the Supreme Court also admonished the

2

prosecutors for failing to disclose exculpatory witness statements to the defense. *See id.* at 1066 n.2, 1073 n.8.  On January 8, 1999, the eve of the second trial, the district attorney's office dismissed the murder charges against Shareef Cousin.

On January 7, 2000, plaintiff filed a complaint in the Eastern District of Louisiana, seeking relief under 42 U.S.C. §§ 1983, 1985, 1986, and 1988 as well as state tort law.  Plaintiff alleges a multitude of prosecutorial and law enforcement abuses: fabrication of evidence, unlawful search and seizure, false arrest, false imprisonment, interference with and coercion of witnesses, presentation of perjured testimony, suppression of exculpatory evidence, conspiracy, malicious prosecution, defamation, intentional infliction of emotional distress, and failure to train and supervise subordinates.  Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

Defendants Connick, Jordan, and Berry now move to dismiss plaintiff's claims or, alternatively, for summary judgment.  They argue that plaintiff's claims are prescribed, assert absolute and qualified immunity, and contend that no policy, custom, or practice of the Office of the District Attorney in Orleans Parish violated plaintiff's civil rights.

## II.   Discussion

### A.    Legal Standards

#### 1.    Rule 12(b)(6) Standard

In a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all well-pleaded facts as true and view the facts in the light most favorable to the plaintiff. *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *American Waste & Pollution Control Co. v. Browning-Ferris, Inc.*, 949 F.2d 1384, 1386 (5th Cir. 1991). Dismissal is warranted if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Piotrowski v. City of Houston*, 51 F.3d 512, 514 (5th Cir. 1995) (quoting *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994)).  In deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true. *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

When deciding a Rule 12(b)(6) motion, the Court will not consider matters outside the pleadings, except those matters of which the Court takes judicial notice. *See* FED. R. CIV. P. 12(b); FED R. EVID. 201. *See also Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)("In deciding a 12(b)(6) motion to dismiss, a

court may permissibly refer to matters of public record."); In re
*Ford Motor Co. Bronco II Prods. Liab. Litig.*, 909 F. Supp. 400,
403 (E.D. La. 1995)("[T]he Court may take judicial notice of
matters of public record."); *Chadwick v. Layrisson*, 1999 WL
717628, at *2 (E.D. La. Sept. 13, 1999)(same).

### 2. Summary Judgment Standard

Summary judgment is appropriate when there are no genuine
issues as to any material facts, and the moving party is entitled
to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). *See
also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct.
2548, 2552 (1986). Accordingly, a court must be satisfied that
no reasonable trier of fact could find for the nonmoving party.
In other words, "if the evidentiary material of record were
reduced to admissible evidence in court, it would be insufficient
to permit the nonmoving party to carry its burden." *Beck v.
Texas State Bd. of Dental Exam'rs*, 204 F.3d 629, 633 (5th Cir.
2000).

Initially, the moving party bears the burden of establishing
that there are no genuine issues of material fact. If the
dispositive issue is one for which the nonmoving party will bear
the burden of proof at trial, the moving party may satisfy its
burden by merely pointing out that the evidence in the record
contains insufficient proof concerning an essential element of

5

the nonmoving party's claim. *See Celotex*, 477 U.S. at 325, 106 S. Ct. at 2554. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553. *See also Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994). Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential on which it bears the burden of proof at trial. *See Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue exists for trial. *See id.* at 325, 106 S. Ct. at 2553-54; *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

**B.    Federal Claims**

Plaintiff asserts claims for fabrication of evidence, unlawful search and seizure, false arrest, false imprisonment, suppression of exculpatory evidence, conspiracy, malicious prosecution, defamation, and failure to train and supervise subordinates under 42 U.S.C. §§ 1983, 1985, 1986, and 1988.

**1.    Absolute Immunity**

Defendants Jordan and Berry argue that the doctrine of absolute immunity precludes plaintiff's § 1983 claims against them in their individual capacities because their actions were

6

taken in furtherance of their prosecutorial duties.  Although
§ 1983 does not, on its face, allow for a defense of official
immunity, the United States Supreme Court held in *Tenney v.*
*Brandhove*, 341 U.S. 367, 376, 71 S. Ct. 783, 788 (1951), that
Congress did not intend § 1983 to abrogate immunities "well
grounded in history and reason."  Since *Tenney*, the Supreme Court
has recognized two kinds of immunity--absolute and qualified.

The Supreme Court has been "quite sparing" in its
recognition of absolute immunity in § 1983 actions, and it has
adopted a "functional approach" to determine whether a particular
defendant merits absolute immunity.  *Kalina v. Fletcher*, 522 U.S.
118, 127, 118 S. Ct. 502, 508 (1997); *Buckley v. Fitzsimmons*, 509
U.S. 259, 269, 113 S. Ct. 2606, 2613 (1993).  Consistent with
this functional approach, prosecutors enjoy absolute immunity
only for those activities "intimately associated with the
judicial phase of the criminal process."  *Imbler v. Pachtman*, 424
U.S. 409, 430, 96 S. Ct. 984, 995 (1976).  *See also Kerr v.*
*Lyford*, 171 F.3d 330, 336 (5th Cir. 1999).  Accordingly, "in
initiating and presenting the State's case, the prosecutor is
immune from a civil suit for damages under § 1983."  *Imbler*, 424
U.S. at 431, 96 S. Ct. at 995.  Absolute immunity does not shield
a prosecutor's administrative duties or those investigatory
functions that do not relate to his preparation for the

7

initiation of a prosecution or for judicial proceedings.
*Buckley*, 509 U.S. at 273, 113 S. Ct. at 2615 ("We have not
retreated, however, from the principle that acts undertaken by a
prosecutor in preparing for the initiation of judicial
proceedings or for trial, and which occur in the course of his
role as an advocate for the State, are entitled to the
protections of absolute immunity.").  An official seeking
absolute immunity bears the burden of showing that such immunity
is justified.  *See Burns v. Reed*, 500 U.S. 478, 486, 111 S. Ct.
1934, 1939 (1991).

> **a.    Fabrication of Evidence, Suppression of
>          Exculpatory Evidence, and Malicious
>          Prosecution**

Plaintiff challenges Jordan's and Berry's assertion that all
of their actions were in furtherance of their prosecutorial
duties.  He argues that absolute immunity does not shield Jordan
and Berry because they (1) forced witnesses to talk against their
will, (2) suppressed exculpatory evidence, (3) kidnaped
witnesses, (4) illegally investigated witnesses, and (5) had a
racial motive for pursuing the death penalty.

The Court rejects plaintiff's arguments and finds that
absolute immunity shields Jordan and Berry from plaintiff's
§ 1983 claims for fabrication of evidence, suppression of
exculpatory evidence, and malicious prosecution.  First, merely

asserting that defendants coerced statements from witnesses does
not present a violation of <u>plaintiff's</u> constitutional rights.
Plaintiff's assertion that these interviews produced exculpatory
evidence that defendants' suppressed is unavailing, because it is
well settled that a prosecutor cannot be held personally liable
for the knowing suppression of exculpatory evidence. *See, e.g.,*
*Imbler*, 424 U.S. at 430, 96 S. Ct. at 995; *Reid v. New Hampshire*,
56 F.3d 332, 336 (1st Cir. 1995)(citing cases); *Carter v. Burch*,
34 F.3d 257, 262-63 (4th Cir. 1994); *Henzel v. Gerstein*, 608 F.2d
654, 657 (5th Cir. 1979).   Second, although plaintiff alleges
that the prosecutors removed certain witnesses from the state
courthouse to the district attorney's office, this occurred
<u>during</u> the trial.   Jordan and Berry are absolutely immune for
their actions during the presentation of the State's case.
Third, plaintiff challenges the witness interviews conducted by
defendants seven months after his indictment and a few weeks
before his originally scheduled trial date in October 1995.
(Defs.' Mem. Supp. Mot. Dismiss, Ex. 1 at 2.)   This is not the
type of investigatory activity that falls outside a prosecutor's
role as advocate.   A prosecutor's evaluation of evidence
assembled by police and preparation of it for presentation at
trial after a decision to indict has been made are covered by
absolute immunity.   *See Buckley*, 509 U.S. at 272-73, 113 S. Ct.

9

at 2615.   Indeed, Jordan's testimony, which plaintiff relies
upon, indicates that he interviewed witnesses identified by the
police or by plaintiff's trial counsel as alibi witnesses in the
criminal proceeding.   (Pl.'s Supplemental Reply Defs.' Mot.
Dismiss, Ex. J at 191-93.)   This activity falls within absolute
immunity.   Even though plaintiff alleges that defendants coerced
or conspired with some of these witnesses to present false
evidence at trial, however distasteful, the presentation of false
evidence to the trial court necessarily implicates an assistant
district attorney's prosecutorial function and, accordingly, is
shielded by absolute immunity.   *See, e.g.*, *Imbler*, 424 U.S. at
430-31, 96 S. Ct. at 995; *Carter*, 34 F.3d at 263 ("[T]he
presentation of false testimony in court is a charge for which
the prosecutor is afforded absolute immunity."); *Dory v. Ryan*, 25
F.3d 81, 83 (2d Cir. 1994).   Fourth, absolute immunity analysis
is objective.   The focus is on the function performed by the
district attorney; motive is irrelevant.   *See Groom v. Fickes*,
966 F. Supp. 1466, 1472 (S.D. Tex.), *aff'd*, 129 F.3d 606 (5th
Cir. 1997)(prosecutor "enjoys absolute immunity even if he
maliciously singled out the plaintiff for prosecution").
Therefore, the alleged racial animus is irrelevant.

###   b.   Conspiracy

As Jordan and Berry are absolutely immune from plaintiff's

10

§ 1983 claims for fabrication of evidence, suppression of

exculpatory evidence, and malicious prosecution, the Court

further finds that "plaintiff derives no benefit from alleging a

conspiracy" predicated on those immune actions and dismisses

those conspiracy claims. *Pinaud v. County of Suffolk*, 52 F.3d

1139, 1148 (2d Cir. 1995)(citing cases). *See also Dory*, 25 F.3d

at 83 ("The fact that such a conspiracy is certainly not

something that is *properly* within the role of a prosecutor is

immaterial, because '[t]he immunity attached to his function, not

to the manner in which he performed it.'" (quoting *Barrett v.*

*United States*, 798 F.2d 565, 573 (2d Cir. 1986)(emphasis in

original)); *Smith v. City of New Orleans, Dep't of Police*, 1996

WL 39424, at *3 (E.D. La. Jan. 30, 1996)("The Court has already

determined that the underlying acts were protected by absolute

immunity; mere allegations that defendants performed those acts

in the course of a conspiracy will not be sufficient to avoid

absolute immunity."). All of plaintiff's alleged conspiracies

involving Jordan and Berry--conspiracies to fabricate evidence,

to suppress exculpatory evidence, and to commit perjury--arose

after plaintiff had been arrested and indicted by the grand jury

and during the preparation for trial. (Compl. at 5, 32-34, 38,

45, 51, 53, 64, 67.)

11

### c.    Search and Seizure

Defendants argue that they are absolutely immune from plaintiff's claims for illegal search and seizure.  While plaintiff alleges that a New Orleans police detective fabricated a false basis for the arrest warrant and the search of plaintiff's home, he does not allege that Connick, Jordan, or Berry were involved in that fabrication.  Greg Kennedy, the assistant district attorney who screened the case against plaintiff and presented it to the grand jury, has been dismissed, on plaintiff's motion, as a defendant.  (Pl.'s Mot. Dismiss Greg Kennedy at 1.)  Jordan and Berry were assigned to plaintiff's prosecution <u>after</u> the grand jury indicted him.  (Defs.' Mem. Supp. Mot. Dismiss, Exs. 3 at 1-2, 4 at 1-2.)

Even though Jordan and Berry had no involvement in the search and seizure, plaintiff claims that they had to have learned that the warrant application was false because they had "records" to this effect.  Plaintiff also claims that defendants failed to expose the "lies" and took investigative steps outside their roles as prosecutors to fabricate a stronger case.  (Compl. at 19, 23, 65.)  Given the stage of the proceedings at which Jordan and Berry became involved in plaintiff's prosecution, these claims are not claims for illegal search and seizure, but instead fall under plaintiff's complaints that Jordan and Berry

12

suppressed exculpatory evidence, fabricated evidence, and
maliciously prosecuted him. As the Court has already explained,
Jordan and Berry are absolutely immune for the suppression of
exculpatory evidence, fabrication of evidence, and malicious
prosecution.

### d.    False Arrest and False Imprisonment

The Court further dismisses plaintiff's claims for false
arrest and false imprisonment against Jordan and Berry. The
predicate for these claims is that Jordan and Berry suppressed
exculpatory evidence that the basis for plaintiff's arrest was
"false or insufficiently reliable." (Compl. at 68.) As Jordan
and Berry did not become involved in plaintiff's prosecution
until <u>after</u> his arrest and incarceration, these claims are not
claims for false arrest and false imprisonment. Rather,
plaintiff presents a claim for the suppression of exculpatory
evidence, from which, as the Court already explained, Jordan and
Berry are absolutely immune.

### 2.    Qualified Immunity

Plaintiff claims that Connick, in his individual capacity,
failed to train and supervise his subordinates adequately to
prevent them from suppressing exculpatory evidence. (Compl. at
77.) Connick argues that the doctrine of qualified immunity
shields him from this claim.

Qualified immunity shields government officials from civil liability for damages based upon the performance of discretionary functions if the acts were objectively reasonable in light of then clearly established law. *See Buckley*, 509 U.S. at 268, 113 S. Ct. at 2613; *Thompson v. Upshur County*, 245 F.3d 447, 456 (5th Cir. 2001). Once a § 1983 defendant pleads qualified immunity and shows that he is a governmental official whose position involves the exercise of discretion, the plaintiff bears the burden of rebutting this defense by establishing that the official's wrongful conduct violated clearly established law. *Thompson*, 245 F.3d at 456-57, 460 (quoting *Pierce v. Smith*, 117 F.3d 866, 871 (5th Cir. 1977)).

The first step in the qualified immunity analysis is to determine whether the plaintiff has alleged the violation of a constitutional right. *Id.* at 457. If the plaintiff alleges a constitutional violation, the Court must assess whether the defendant's conduct was objectively reasonable in light of clearly established law at the time that the challenged conduct occurred. *Id.* "Clearly established" means the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987). A defendant's acts are objectively reasonable unless all reasonable

14

officials in those circumstances would have then known that the defendant's conduct violated the Constitution or federal statute as alleged by plaintiff. *Thompson*, 245 F.3d at 457 (citing cases). In this determination of objective reasonableness, the defendant's subjective state of mind is irrelevant. *Id.* (citing cases). Furthermore, even officials who reasonably, but mistakenly, commit a constitutional violation are entitled to immunity. *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001).

Here, plaintiff alleges violations of his clearly established constitutional rights. However, as it is undisputed that Connick was not personally involved in the acts that allegedly deprived plaintiff of his constitutional rights, the issue is whether his policies were objectively reasonable in light of the then clearly established law.

Under § 1983, "[s]upervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompson*, 245 F.3d at 459 (quoting *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)). A supervisor is liable if he failed to train or supervise the assistant district attorneys involved, there is a causal connection between the alleged failure to supervise or train and the alleged violation of plaintiff's rights, and the failure to train or supervise

15

constituted deliberate indifference to the plaintiff's
constitutional rights. *See id.* (citing cases). For a lack of
training or supervision to constitute deliberate indifference,
plaintiff must demonstrate at least a pattern of similar
violations. *See id.* (citing *Snyder v. Trepagnier*, 142 F.3d 791,
798 (5th Cir. 1998)). "Furthermore, the inadequacy of training
must be obvious and obviously likely to result in a
constitutional violation." *Id.* (citing cases).

As a threshold matter, plaintiff admits that Connick's *Brady*
policy is adequate. (Pl.'s Supplemental Reply Defs.' Mot.
Dismiss at 22.) He complains, however, that his injuries are a
consequence of Connick's failure to enforce that policy. To
substantiate his allegation that Connick's failure to train or
supervise his staff constitutes deliberate indifference,
plaintiff cites seven opinions over the past twenty-five years in
which courts found *Brady* violations sufficient to reverse
convictions and a handful of other cases where *Brady* problems
were not sufficient to warrant reversing convictions. (Pl.'s
Mem. Reply Mot. Dismiss at 20 n.26, 20 n.27.) None of these
cases, however, found a lack of a *Brady* policy or a failure to
train and supervise.

Evidence of Connick's policy and training program is
substantiated in eight affidavits, which explain section 5.25 of

16

the district attorney's policy manual, the training classes
(which qualify for Continuing Legal Education credits), and the
regular circulation of judicial opinions and professional
publications. (*Id.*, Exs. 2 Kennedy affidavit) at 3-4, 3 (Berry
affidavit) at 2-3, 4 (Jordan affidavit) at 3-4, 5 (Connick
affidavit at 2-4), 6 (McElroy affidavit) at 2-7, 7 (Solino
affidavit) at 2, 8 (McSmith affidavit) at 2-3, 9 (Buras
affidavit) at 2-4.) The only evidence to the contrary that
plaintiff offers is an affidavit by Bruce G. Whittaker, whom
Connick reported to the state bar for prosecutorial misconduct.
Mr. Wittaker describes three cases in which there were delays in
obtaining DNA tests. (Pl.'s Supplemental Reply Defs.' Mot.
Dismiss, Ex. L at 1-2.) He does not aver, however, that those
delays are attributable to any deficiencies in Connick's training
and supervision. Mr. Wittaker also states: "From my lengthy
experience in and around Tulane and Broad, Mr. Connick's office
has a reputation for not always disclosing in a timely manner
exculpatory evidence as required by law." (*Id.*, Ex. L at 3.)
Mere reputation, however, is insufficient to raise a question of
fact or to assign Connick liability for failure to train and
supervise. Plaintiff makes serious allegations, which the Court
takes seriously. Absent the necessary evidence, however,
plaintiff fails to satisfy his burden of showing that a genuine

17

issue of fact exists.

Furthermore, the Court finds that plaintiff has not raised a triable issue as to whether there is a pattern of *Brady* violations.  Taking judicial notice of the tens of thousands of cases handled by the Office of the District Attorney in Orleans Parish during Connick's tenure since April 1, 1974, the Court finds that the cases cited by plaintiff span twenty-five years and are isolated, fact-specific incidents that do not constitute a pattern evidencing Connick's deliberate indifference.  (Defs.' Mem. Supp Mot. Dismiss, Exs. 5 at 1-2, 5 at 4-5, 8 at 2-3.)  While no constitutional violation is insignificant, the issue here is whether the violations occurred with such frequency that Connick could be deemed to be deliberately indifferent.  At the very best, plaintiff has shown that *Brady* problems occurred in fewer than one out of a thousand cases.  Further, plaintiff fails to provide the Court a benchmark to determine that his showing is significant enough to amount to a pattern.  *Cf. Thompson*, 245 F.3d at 463.  Accordingly, in the absence of a pattern, Connick is not liable for any failure to train or supervise.

### 3.    Official Capacity

The Court further dismisses plaintiff's claims against Connick, Berry, and Jordan in their official capacities. Official-capacity suits are tantamount to a suit against the

18

public entity.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66, 105
S. Ct. 3099, 3105 (1985).  In order to hold a public entity
liable under § 1983 for the misconduct of one of its employees,
"a plaintiff must initially allege that an official policy or
custom 'was a cause in fact of the deprivation of rights
inflicted.'"  *Spiller v. City of Texas City, Police Dep't*, 130
F.3d 162, 167 (5th Cir. 1997)(quoting *Leffall v. Dallas Indep.
Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994)).

A public entity cannot be held liable under § 1983 on a
theory of respondeat superior.  *Kentucky*, 473 U.S. at 168, 105 S.
Ct. at 3016; *Monell v. Department of Soc. Servs. of the City of
New York*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036 (1978).  "To
satisfy the cause in fact requirement, a plaintiff must allege
that 'the custom or policy served as the moving force behind the
[constitutional] violation' at issue, or that [his] injuries
resulted from the execution of the official policy or custom."
*Spiller*, 130 F.3d at 167 (citations omitted).  *See also Board of
County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403, 117
S. Ct. 1382, 1388 (1997).  "The description of a policy or custom
and its relationship to the underlying constitutional violation,
moreover, cannot be conclusory; it must contain specific facts."
*Id.*

Plaintiff alleges that the policies (or lack of enforcement

19

thereof) of the Office of the District Attorney are the cause in fact of his injuries. As the Court already explained, plaintiff fails to present any evidence of a policy or custom to suppress exculpatory evidence. In the absence of that evidence, plaintiff fails to satisfy his burden of showing a genuine issue of fact exists. The Court therefore dismisses plaintiff's claims against defendants in their official capacities.

### 4. Defamation

Plaintiff asserts a § 1983 defamation claim, alleging that Connick defamed him when Connick commented on August 5, 1996 that plaintiff's conviction "was based on fact."[1] (Compl. at 60.) Connick argues that defamation is not a constitutional tort and is not actionable under § 1983. Plaintiff did not respond to this argument.

Defamation, in itself, is not a constitutional tort. *See Kerr*, 171 F.3d at 339. A false accusation of wrongdoing, however, "can be a link in a chain showing a deprivation of liberty or property without due process." *Doe v. Louisiana*, 2 F.3d 1412, 1421 (5th Cir. 1993)(King, J., concurring)(quoting

---

[1]    The Court previously ruled that the only defamatory comment by Connick, Jordan, or Berry that was sufficiently alleged in plaintiff's complaint was an August 5, 1996 comment by Connick that plaintiff's conviction "was based on fact." *See Cousin v. Small*, 2000 WL 1100384, at *3 (E.D. La. Aug. 4, 2000). *See also* Compl. at 60. Plaintiff has not amended his complaint to specify any additional defamatory comments.

20

*Mahoney v. Kesert*, 976 F.2d 1054, 1060 (7th Cir. 1992)). *See also San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 700-01 (5th Cir. 1991)(§ 1983 claimant must show stigma plus infringement of some other interest). In his opposition briefs, plaintiff does not show how this single statement by Connick satisfies the stigma plus rationale. He does not explain how the statement was a link in the deprivation of his liberty, as he had been convicted and incarcerated for several months when Connick made the statement. Indeed, the Court has found no authority validating a § 1983 claim in this context. The Court accordingly dismisses plaintiff's § 1983 claim for defamation.

**C.   State Claims**

Plaintiff also asserts state tort claims for fabrication of evidence, unlawful search and seizure, false arrest, false imprisonment, interference with and coercion of witnesses, presentation of perjured testimony, suppression of exculpatory evidence, conspiracy, malicious prosecution, defamation, intentional infliction of emotional distress, and failure to train and supervise subordinates. Defendants argue that Louisiana law does not recognize a cause of action against a district attorney arising out a criminal prosecution outside of a claim for malicious prosecution and that the doctrine of absolute immunity shields them from plaintiff's claim for malicious

21

prosecution.

In 1996, the Louisiana Supreme Court expressly adopted the United States Supreme Court's functional analysis set forth in *Imbler* to determine whether a prosecutor is entitled to absolute immunity. *Knapper v. Connick*, 681 So. 2d 944, 950-51 (La. 1996)(citing cases). As the Court already explained, a district attorney and his assistants are absolutely immune from civil liability for actions taken within the scope of their prosecutorial duties. *See id.*; *Sinclair v. Louisiana*, 769 So. 2d 1270, 1271 (La. App. 1st Cir. 2000). An official seeking absolute immunity, however, bears the burden of showing that such immunity is justified. *See Burns*, 500 U.S. at 486, 111 S. Ct. at 1939.

Despite defendants' assertion to the contrary, Louisiana law recognizes causes of action other than malicious prosecution against prosecutors. *See, e.g.*, *West v. Foti*, 654 So. 2d 834, 836 (La. App. 4th Cir. 1995)(district attorney may be subject to suit for false arrest and false imprisonment). Although defendants only argue that they are absolutely immune from plaintiff's state claims for malicious prosecution, the Court's analysis of defendants' absolute immunity under federal law applies to plaintiff's state law claims. Accordingly, the Court extends that analysis and dismisses plaintiff's state law claims

22

for fabrication of evidence, unlawful search and seizure, false arrest, false imprisonment, interference with and coercion of witnesses, presentation of perjured testimony, suppression of exculpatory evidence, conspiracy, and malicious prosecution. The Court also dismisses plaintiff's claims for intentional infliction of emotional distress because it is predicated on acts shielded by absolute immunity.

The Court further dismisses plaintiff's claims for failure to train and supervise as well as his claims against defendants in their official capacities. As the Court already explained, plaintiff fails to provide the requisite evidence to create an issue of fact as to these claims.

Finally, the Court dismisses plaintiff's state defamation claim. Plaintiff fails to cite any cases in which a state prosecutor has been held civilly liable for defamation, and he has not briefed the validity of this claim. Further, pretermitting questions of possible privileges, any Louisiana defamation claim requires malice. *See Gugliuzza v. K.C.M.C., Inc.*, 606 So. 2d 790, 791 (5th Cir. 1992); *Cangelosi v. Schwegmann Bros. Giant Super Mkts.*, 390 So. 2d 196, 198 (5th Cir. 1980). There are no allegations of actual malice in the complaint, and malice can not be implied from the circumstances. Indeed, as to the challenged statement in issue, plaintiff does

23

not even allege that Connick knew the statement was false when he made it.

## III. Conclusion

For the foregoing reasons, the Court dismisses all of plaintiff's claims against defendants Connick, Jordan, and Berry.

New Orleans, Louisiana, this 4th day of June, 2001.

_____
Sarah Vance
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

24